```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__1/9/2018__
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Maria C. Gutierrez,

                                        **Plaintiff,**

                -against-

Commissioner of Social Security,

                                        **Defendant.**

**1:16-cv-06673 (SDA)**

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Plaintiff, Maria C. Gutierrez ("Gutierrez"), brings this action pursuant to § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). (Compl., ECF No. 2.)[1] Presently before the Court are the Commissioner's motion, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings (Def.'s Notice of Mot., ECF No. 17), and Gutierrez's cross-motion for judgment on the pleadings. (ECF No. 25.)

For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is DENIED and Gutierrez's cross-motion is GRANTED IN PART.

---

[1] At the time her Complaint was filed, Gutierrez was appearing *pro se*. *Pro bono* counsel appeared on her behalf on May 18, 2017, after the Commissioner had filed the motion for judgment on the pleadings. (ECF Nos. 21, 22.) Thus, Gutierrez's memorandum in support of her cross-motion was prepared by *pro bono* counsel. The Court expresses its appreciation to *pro bono* counsel for undertaking the representation of Gutierrez in this case.

**I.      Procedural History**

Gutierrez applied for DIB on July 31, 2013, alleging a disability onset date of October 28,

2012, due to her neck, shoulder and back conditions. (Administrative R. ["R."] 70, 141-42, 164,

ECF No. 13.) On December 19, 2014, Gutierrez, appearing with counsel, had a hearing before

Administrative Law Judge ("ALJ") Robert Gonzalez (R. at 31-59), who denied Gutierrez's

application on February 26, 2015. (R. at 15-30.) ALJ Gonzalez's decision became the

Commissioner's final decision when the Appeals Council denied review on June 23, 2016. (R. at

1-6.)  This action followed.

**II.      Factual History**[2]

Gutierrez, who was born in 1963 and was fifty-one years of age on the date of her hearing,

completed both high school and training as a nursing assistant. (R. at 35-36, 70.)  She alleges she

is disabled due to a neck, shoulder and back injury she suffered while lifting patients during her

work as a nursing assistant on October 28, 2012.  (R. at 35-36, 288, 292; Compl., ECF No. 2, at 1.)

Her date last insured ("DLI") is December 31, 2014. (R. at 18.)

The day after her injury, Gutierrez sought medical treatment (R. at 288-89), and her

medical records reflect that she received treatment throughout the period from onset to DLI. Of

particular relevance to this opinion were her visits to Dr. Jozef Debiec, a pain management

specialist, and Dr. Paul Kastuk, a chiropractor. On August 29, 2013, Gutierrez visited Dr. Debiec.

Her physical examination by him reflected, among other things, a limited range of motion and

---

[2] Much of the factual history related to Gutierrez's DIB application is not relevant to this opinion. Only those facts necessary to frame the legal issues addressed in this opinion are summarized below.

muscle tenderness and spasms. (R. at 293.) Dr. Debiec observed that her MRI showed "[l]umbar degenerative changes and facet arthropathy[3] [as well as a] [d]egenerative disc . . . ." (*Id*.) He diagnosed Gutierrez with "lumbago,[4] [d]isplacement of [the] lumbar intervertebral disc without myelopathy,[5] [d]egeneration of the lumbar or lumbosacral intervertebral disc, [l]umbosacral spondylosis[6] without myelopathy," and lumbar sprain. (*Id*.) Dr. Debiec instructed the Plaintiff to avoid bending, prolonged sitting and lifting more than 15 pounds. (R. at 294.)

On September 9, 2013, Dr. Kastuk completed a questionnaire on Gutierrez's behalf. (R. at 299-304.) He reported that Gutierrez had a diminished lumbar range of motion and severe spasms in the paraspinal muscles of her lumbar spine with radiating trigger points and tenderness. (*Id*. at 301.) He also reported that she had weakness in her posterior trunk muscles, gluteal muscles, quadriceps and hamstrings. (*Id*.) He opined that she was limited to carrying five pounds, standing and walking less than two hours per day, and sitting less than six hours per day. (*Id*. at 303.) He also stated that she was limited in pushing and pulling. (*Id*.) Significantly, Dr. Kastuk's conclusions were predicated upon twenty-two visits by Gutierrez with him over the period of February through April 2013, and based upon those visits, he found her prognosis to be "poor." (*Id*. at 299-300.)

---

[3] "Arthropathy" is defined as "[a]ny disease affecting a joint." *Stedman's Medical Dictionary* 161 (28th ed. 2005).

[4] "Lumbago" is defined as "[p]ain in mid and lower back; a descriptive term not specifying cause." *Stedman's Medical Dictionary* 1121 (28th ed. 2005).

[5] "Myelopathy" is "[d]isorder of the spinal cord." *Stedman's Medical Dictionary* 1270 (28th ed. 2005).

[6] "Spondylosis" refers to "ankylosis," or the stiffening or fixation of a joint, "of the vertebrae; often applied nonspecifically to any lesion of the spine of a degenerative nature." *Stedman's Medical Dictionary* 95, 1813 (28th ed. 2005).

On October 24, 2013, Dr. Debiec completed a questionnaire on Gutierrez's behalf. (R. at 309-15.) He diagnosed her with lumbar disc herniation, lumbar spondylosis and lumbar degenerative disc disease. (*Id*. at 308-09.) Dr. Debiec stated in the questionnaire that Gutierrez could lift and carry up to 15 pounds "frequently (up to 2/3 of a work day)," could stand and walk up to eight hours per day, and sit less than six hours per day. (*Id*. at 312.) He indicated no limitations in her ability to push or pull. (*Id*. at 313.)[7]

On May 22, 2014, Gutierrez returned to Dr. Debiec complaining of aching and pain in her lower back which radiated down her left leg. She reported a pain score of 8 out of 10. (R. at 388.) On physical examination, her gait was normal, and she had 30 degrees of flexion, zero degrees of extension and five degrees of lateral rotation in her lumbar spine. (*Id*.) Gutierrez also exhibited paraspinal muscle tenderness and spasms, but a straight leg raise was negative. (*Id*.) She was unable to heel-toe walk and sensory deficits to light tough were noted, but a motor examination of her lower extremities was normal. (*Id*.) He administered a lumber epidural steroid injection at the L5-S1 level. (*Id*.) During a follow-up visit with Dr. Debiec on June 4, 2014, Gutierrez reported some pain improvement (her score was 6 out of 10), but her physical examination results were unchanged. (*Id*. at 387.)

Dr. Debiec next examined Gutierrez on July 17, 2014. He found her to be in "moderate distress," and that she had paraspinal muscle tenderness and spasms. (R. at 386.) His diagnoses were unchanged. (*Id*.)

---

[7] After the filing of the Complaint in this case, Dr. Debiec provided to Gutierrez two letters, dated June 19, 2017, and July 3, 2017, that seek to "clarify" what is set forth in the October 24, 2013 questionnaire. (ECF Nos. 27-1, 27-2.) These letters are discussed in the "New Evidence" section of this opinion, *infra*.

### III.  ALJ Gonzalez's Decision

ALJ Gonzalez determined that Gutierrez did not have a disability within the meaning of the Act. Applying the Commissioner's five-step sequential evaluation, the ALJ found at step one that Gutierrez had not engaged in substantial gainful activity from her onset date of October 28, 2012, through the DLI date, December 31, 2014.  (R. at 20.)  The ALJ concluded, at the second step, that her lumbar spine stenosis[8] and facet hypertrophy, myofascial pain syndrome,[9] lumbago, diabetes mellitus, cervical spine disc bulges, obesity, left shoulder adhesive capsulitis[10] and tendonitis were all severe impairments under the Act. (*Id*.) At step three, the ALJ found that Gutierrez's severe impairments, singly or combined, did not meet or medically equal one of the listed impairments. (*Id*. at 21.) The ALJ determined that she retained the residual functional capacity to perform the full range of light work, except that she can only occasionally push and pull, kneel, crouch, stoop and occasionally reach overhead.  (*Id*. at 21-25.) At step four, the ALJ found that Gutierrez could perform her past relevant work as an office clerk. (*Id*. at 26.) Notably, in reaching his conclusions, the ALJ noted that Dr. Debiec was a "treating source," and that "[o]verall" he gave "some weight" to "Dr. Debiec's opinion." (*Id*. at 23.) Further, the ALJ gave "little weight" to the opinion of Dr. Kastuk, the chiropractor. (*Id*.)

---

[8] "Stenosis" is a "stricture of any canal or orifice." *Stedman's Medical Dictionary* 1832 (28th ed. 2005).

[9] Myofascial pain syndrome is "irritation of the muscles and fascia of the back and neck." *Stedman's Medical Dictionary* 1907 (28th ed. 2005).

[10] "Adhesive capsulitis" is "a condition in which joint motion becomes restricted because of inflammatory thickening of the capsule; a common cause of shoulder stiffness." *Stedman's Medical Dictionary* 303 (28th ed. 2005).

**IV.     New Evidence**

Gutierrez has submitted to the Court certain evidence that was not part of the record before the ALJ, as follows:

**A.   Dr. Debiec's June and July 2017 letters**

Gutierrez submitted to the Court letters dated June 19, 2017 and July 3, 2017 that seek to "clarify" the October 2016 questionnaire from Dr. Debiec that was before the ALJ. (Exs. 1, 2 to Algie Decl. (ECF Nos. 27-1, 27-2).) Dr. Debiec states in the letters that "the limitations for standing, walking and sitting were for a 24 hour period, not for an 8-hour work day." (*Id*.) He further states in the July 3 letter that Gutierrez "is unable to work without restrictions," "should sit no longer than one hour, stand no longer that one hour, no bending, no stooping, no kneeling, and no lifting or carrying of more than 15lbs." Dr. Debiec states that these restrictions "are due to her diagnoses of Lumbar spondylosis, displacement of lumbar intervertebral disc, lumbar radiculopathy[11]." (ECF No. 27-2.)

**B.   Dr. Debiec's October 2014 Workers' Compensation Board Report**

Dr. Debiec submitted a report to the New York Workers' Compensation Board, dated October 7, 2014. (Ex. 3 to Algie Decl. (ECF No. 27-3).) This report states that Gutierrez had reached maximum medical improvement and that there was permanent impairment of 65% to the lumbar spine. (*Id*.)

---

[11] "Radiculopathy" is defined as "[d]isorder of the spinal nerve roots." *Stedman's Medical Dictionary* 1622 (28th ed. 2005).

**C. Dr. Chen's April 2016 reports about MRI**

Dr. Chen of Phelps Memorial Hospital performed a Magnetic Resonance Imaging ("MRI") of Gutierrez's lumbar spine on April 6, 2016. He prepared reports on April 7, 2016, by doing a comparison to the results of an MRI conducted on April 26, 2014. (*See* Ex. 5 to Algie Decl. (ECF No. 27-5).) The reports state that, after comparing the results of the MRI's, the only noticeable significant development was the herniation in the L3-4 spinal segment. (*Id.*)

**D. Social Worker's December 2014 Treatment Notes**

On December 30, 2014 (after the ALJ hearing, but before the DLI), Gutierrez saw a licensed clinical social worker, Lauren Davis. Ms. Davis's treatment notes discusses Gutierrez's back injury in the context of her mental health. The notes state that Gutierrez "sometimes feels worried, down, stressed out and knows that this increases pain." (Ex. 4 to Algie Decl. (ECF No. 27-4).)

## DISCUSSION

### I. Standard of Review

A motion for judgment on the pleadings should be granted if it is clear from the pleadings that "the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995). In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The ALJ's disability determination may be set aside if it is not supported by substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (vacating and remanding ALJ's decision). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the findings of the Commissioner as to any fact are supported by substantial evidence, those findings are conclusive. *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). "[O]nce an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec'y Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and emphasis omitted); *see also, e.g.*, *Florencio v. Apfel*, No. 98 CIV. 7248 (DC), 1999 WL 1129067, at *5 (S.D.N.Y. Dec. 9, 1999) ("The Commissioner's decision is to be afforded considerable deference; the reviewing court should not substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." (internal quotation marks and alterations omitted)).

A person is considered disabled for DIB purposes when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> An individual shall be determined to be under a disability only if [the combined effects of] his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a claim of disability, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted); *accord Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam).

The Commissioner's regulations set forth a five-step sequence to be used in evaluating disability claims:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509 [continuous period of 12 months], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520.

The ALJ found against Gutierrez at steps three and four. As set forth below, because there is new evidence germane to the ALJ's analyses at steps three and four, some of which evidence

9

emanates from Gutierrez's treating physician, this case is remanded to the Commissioner so that

such new evidence can be considered.

**II.      Remand for Consideration of New Evidence**

Pursuant to the sixth sentence of 42 U.S.C. § 405(g), "[t]he court . . . may at any time order

additional evidence to be taken before the Commissioner of Social Security, but only upon a

showing that there is new evidence which is material and that there is good cause for the failure

to incorporate such evidence into the record in a prior proceeding . . . ." To have additional

evidence considered, the claimant must show that the evidence is: (1) new and not merely

cumulative of what is in the record; and (2) "material, that is, both relevant to . . . the time period

for which benefits were denied and probative." *Jones v. Sullivan,* 949 F.2d 57, 60 (2d Cir. 1991).

Evidence is material if a reasonable possibility exists "that the new evidence would have

influenced the [Commissioner] to decide claimant's application differently." (*Id.*)

In the present case, the new evidence sheds light on the nature and extent of the

impairments that the ALJ himself found that Gutierrez suffered from. Dr. Debiec's June and July

2017 letters, Dr. Chen's April 2016 report and the social worker's December 2016 treatment

notes are new, inasmuch as they came after the ALJ hearing was completed, and could not have

been submitted at the hearing.[12] Moreover, these documents relate back to the relevant period.

Dr. Debiec's June and July 2017 letters (ECF Nos. 27-1, 27-2) seek to clarify a document submitted

in October 2013; Dr. Chen's April 2016 MRI report (ECF No. 27-5) compares the 2016 results with

---

[12] Although Dr. Debiec's October 2014 Workers' Compensation Report was available and could have been used at the ALJ hearing, the contents of that report are generally consistent with Dr. Debiec's June and July 2017 letters and rebut the Commissioner's suggestion the reply memorandum (ECF No. 32, at 7) that these later clarifying letters were inconsistent with the substance of Dr. Debiec's opinions expressed during the relevant time period. Thus, it should be considered by the ALJ on remand.

results from April 2014; and the social worker's treatment notes (ECF No. 27-4) discuss Gutierrez's mental state at the time of her injury. The Court finds that there is a reasonable possibility that the new evidence would have influenced the ALJ to reach a different conclusion (particularly in light of the treating physician rule, discussed *infra*). Thus, the ALJ is directed to consider the new evidence on remand, in light of the evidence already contained in the administrative record.[13]

## III.    Treating Physician Rule

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue,* No. 11–CV–1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. § 404.1527(c)) (internal quotation marks omitted). A treating physician's opinion is given controlling weight, provided the opinion as to the nature and severity of an impairment "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The regulations define a treating physician as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. Deference to such a medical provider is appropriate because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the] medical impairment(s)

---

[13] *See James v. Comm'r of Soc. Sec.*, 06-CV-6180 (DLI) (VVP), 2009 WL 2496485 (E.D.N.Y. Aug. 14, 2009) (case remanded for ALJ to consider new evidence of two treating physician reports submitted after ALJ denied claim; one report was more detailed than prior assessments in record and both shed light on severity of claimant's mental illness).

and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical evidence alone or from reports of individual examinations." 20 C.F.R. § 404.1527(c)(2).[14] "[T]he 'treating physician rule' is inextricably linked to a broader duty to develop the record. Proper application of the rule ensures that the claimant's record is comprehensive, including all relevant treating physician diagnoses and opinions, and requires the ALJ to explain clearly how these opinions relate to the final determination." *Lacava v. Astrue,* No. 11–CV–7727 (WHP) (SN), 2012 WL 6621731, at *13 (S.D.N.Y. Nov. 27, 2012) ("In this Circuit, the [treating physician] rule is robust."), *report and recommendation adopted*, No. 11-CV-7727 (WHP), 2012 WL 6621722 (S.D.N.Y. Dec. 19, 2012).

To determine how much weight a treating physician's opinion should carry, the ALJ must consider several factors outlined by the Second Circuit:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran,* 362 F.3d at 32 (citation omitted); *see* 20 C.F.R. § 404.1527(c)(2). If, based on these considerations, the ALJ declines to give controlling weight to the treating physician's opinion, the ALJ must nonetheless "comprehensively set forth reasons for the weight" ultimately assigned to

---

[14] A treating physician's opinion is not always controlling. For example, where "the treating physician issued opinions that [were] not consistent with other substantial evidence in the record, such as the opinion of other medical experts, the treating physician's opinion is not afforded controlling weight." *Pena ex rel. E.R.,* 2013 WL 1210932, at *15 (quoting *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004)) (internal quotation marks omitted) (alteration in original); *see also Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he less consistent [the treating physician's] opinion is with the record as a whole, the less weight it will be given.").

the treating source. *Halloran,* 362 F.3d at 33. "Courts have not hesitate[d] to remand [cases] when the Commissioner has not provided good reasons." *Pena ex rel. E.R.,* 2013 WL 1210932, at *15 (quoting *Halloran,* 362 F.3d at 33) (alterations in original) (internal quotation marks omitted).

In the present case, as the ALJ acknowledged, Dr. Debiec is a treating physician. (R. at 23.) Further, the medical record establishes a months-long treatment relationship. (*See*, *e.g.*, R. at 292-94, 309-15, 386-88.) Yet, the ALJ only accorded Dr. Debiec's opinion "some weight." (R. at 23.) On remand, as the ALJ considers the new evidence discussed above, the ALJ is directed to articulate good reasons for the weight to be accorded to Dr. Debiec's medical opinions.

The ALJ also is directed to review Dr. Kastuk's opinions in light of the facts that he saw Gutierrez 22 times, completed a detailed report about her treatment and noted that her prognosis was poor. (R. at 299-304.) "While information from a chiropractor cannot establish the existence of a medically determinable impairment, it can be used to provide insight into the severity of Plaintiff's impairment and how it affects Plaintiff's ability to function." *Solsbee v. Astrue*, 737 F. Supp. 2d 102, 114 (W.D.N.Y. 2010).

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is

DENIED. Gutierrez's cross-motion is GRANTED to the extent that the case is hereby REMANDED

to the Commissioner for further proceedings consistent with this Opinion and Order.

**SO ORDERED.**

DATED:       January 9, 2018
             New York, New York

_____

**STEWART D. AARON**
**United States Magistrate Judge**